**Peter FRANCESCHI, Plaintiff,**

v.

**EDO CORPORATION, Defendant.**

**No. 86 CV 68.**

United States District Court,
E.D. New York.

Feb. 27, 1990.

Sonkint Fifer, New York City, for plaintiff.

Keave & Beane, P.C., White Plains, N.Y. by Edward Beane, for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendant moves for partial summary judgment pursuant to Federal Rule Civil Procedure 56. Defendant maintains that in light of the recent Supreme Court decision *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), plaintiff's claims asserted under 42 U.S.C. § 1981 are not actionable and defen-

dant is entitled to judgment dismissing plaintiff's § 1981 claims as a matter of law.

## BACKGROUND

Plaintiff was employed by defendant as a senior tool engineer from October 1, 1979 to May 13, 1985.

In June, 1980 plaintiff suffered a work related injury to his left elbow which was exaccerbated by working at a drafting table. On June 30, 1980, plaintiff requested a transfer/promotion. This request was denied.

From October, 1981 until August, 1983 plaintiff assisted defendant's Chief Tool Engineer, James Parrish. Although he retained the title of Senior Tool Engineer, plaintiff functioned as a supervisor and less than 15% of his time was spent at the drafting table.

In August, 1983, defendant's newly appointed manager Charles Hartung reorganized defendant's Manufacturing and Engineering Department. As part of the reorganization, plaintiff was reassigned from the Tool Engineering Section where he was performing supervisory duties to the Methods Engineering Section. where he was assigned to the drafting table. Plaintiff did not suffer any change in labor grade, loss of compensation, benefits, seniority or privileges.

Plaintiff expressed dissatisfaction with the reassignment and requested to be reassigned to his previous position in the Tool Engineering Section. After approximately two weeks, plaintiff was reassigned to the Tool Engineering Section as a Senior Tool Engineer; however, plaintiff no longer served in a supervisory position and was required to work at a drafting table approximately 85% of the time.

In November, 1983 and again in October, 1984, plaintiff requested a transfer to Senior Mechanical Buyer. These requests were also denied.

In January, 1984, plaintiff requested a transfer to Senior Mechanical Engineer. Plaintiff, later, withdrew his application when he learned that there was no such job opportunity.

In March, 1985, plaintiff filed written charges of discriminatory employment practices by defendant with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("E.E.O.C."). Plaintiff alleged that defendant discriminated against him on the basis of his Hispanic national origin. Plaintiff took time off from work to file these charges.

Following this filing, plaintiff received a formal written disciplinary notice for poor attendance.

In April, 1985, plaintiff filed a second charge with the E.E.O.C. again alleging defendant discriminated against him on the basis of his national origin.

This second charge was later amended on Friday, May 10, 1985. Plaintiff was given four hours without pay to file this amendment; he was told to be at work by 12:45 p.m. Plaintiff was unable to complete his business at the E.E.O.C. office and return to work by 12:45 p.m. and thus, called work to explain that he would not arrive by 12:45 p.m.. Plaintiff then went to the Department of Motor Vehicle.[1]

Plaintiff's employment with defendant was terminated on Monday, May 13, 1985.

On May 16, 1985, plaintiff again amended his second E.E.O.C. charge adding allegations of retaliatory acts by defendant for plaintiff having engaged in protected activities.

Plaintiff received "Notices of Right to Sue" on October 11, 1985 and February 5, 1986. The notices were the basis of two complaints which were combined in an amended complaint. The complaint asserted that both Title VII and § 1981 were violated by: i) defendant failing to transfer/promote plaintiff in June, 1980 because of his national origin; ii) defendant inadequately compensating plaintiff for the supervisory services performed by plaintiff between 1982 and August, 1983 because of his national origin; iii) plaintiff being im-

properly demoted in August, 1983 because of his national origin; iv) defendant denying plaintiff a transfer/promotion to Senior Mechanical Buyer in November, 1983 because of his national origin; v) plaintiff being denied a transfer/promotion to Senior Mechanical Engineer in January, 1984 because of national origin; vi) plaintiff being denied a transfer/promotion to Senior Mechanical Buyer in October, 1984 because of national origin; vii) defendant retaliating against plaintiff for engaging in protected activities by disciplining him in April 1985; and viii) defendant retaliating against plaintiff for engaging in protected activity by firing him on May 13, 1985.

In July 1987, defendant moved for summary judgment. By Memorandum and Order, dated November 13, 1987, this Court dismissed all the Title VII claims except for (vi) that alleging failure to transfer/promote in October, 1984, (vii) that alleging retaliation in April, 1985, and (viii) that alleging retaliation in May, 1985. The other Title VII claims were dismissed because were not timely filed with the EEOC. At that time, this Court also dismissed the § 1981 claim (i) alleging defendant failed to transfer/promote plaintiff in June, 1980 as time barred.

Defendant now moves for summary judgment on the remaining § 1981 claims, i.e. (ii)–(vii).

## DISCUSSION

■ Before deciding whether any of plaintiff's § 1981 claims should be dismissed, this Court must first determine whether *Patterson v. McLean Credit Union*,[2] should be applied retroactively in the case at bar. While courts generally presume that decisions will be applied retroactively, *see Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), this is not an absolute rule. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In *Chevron Oil Co. v.*

---

1. During oral argument, both parties agreed that plaintiff went to the Motor Vehicles Department; plaintiff claims that he was given permission from the person he spoke to on the phone while defendant claims that no such permission was granted.

2. — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

*Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court laid out a three part test for courts to apply when determining whether a decision should be applied retroactively. Courts should balance: 1) whether the decision "establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; 2) whether retroactive operation will further or retard the new rule, in light of its purpose and effect; and 3) whether applying the new rule retroactively will produce substantial inequitable results.

Here, the new rule in question, the *Patterson* decision, overruled clear precedent. Since a number of circuit courts had interpreted 42 U.S.C. § 1981 to reach private employment discrimination,[3] *Patterson's* ruling that discrimination relating to conditions of employment is not actionable under § 1981 may be said to overrule clear precedent. *See E.E.O.C. v. Vucitech,* 842 F.2d 936, 940–42 (7th Cir.1988) (new Supreme Court interpretation of statute meets first *Chevron* requirement where it is contrary to prior interpretation).

While the first factor weighs in favor of not applying the decision retroactively, the second and third factor seem to weigh in favor of applying the *Patterson* decision retroactively in the case at bar. The Court reached the result it did in *Patterson* not only because interpreting § 1981 to cover post-formation conduct unrelated to the enforcement of the contract would be "inconsistent with that statute's limitation to the making and enforcement of contracts" but also because it would undermine "the detailed remedial scheme constructed in [Title VII]." *Patterson,* 109 S.Ct. at 2374, 2375.

That one of plaintiff's reasons for retaining his § 1981 claims is that he may obtain compensatory damages for his physical injuries and punitive damages which are unavailable under Title VII demonstrates that not applying the rule retroactively will retard the rule's ability to protect Title VII's remedial scheme; and hence, the second factor weighs in favor of applying *Patterson* retroactively. *Brackshaw v. Miles, Inc.,* 723 F.Supp. 60 (N.D.Ill.1989).

Similarly, the third factor also weighs in favor of applying *Patterson* in the case at bar. Plaintiff argues that applying *Patterson* in his case would produce "substantial inequitable results" because he would have no redress for those claims which were time barred under Title VII and because plaintiff's counsel would go without compensation for work which had already been completed. However, plaintiff may not argue that he relied on pre–*Patterson* precedent and consciously allowed the time to run on his Title VII claims since he also asserted each of his claims under Title VII. Further, it is unlikely that plaintiff's counsel engaged in a great extent of work solely for the purpose of prosecuting § 1981 claims since the burden of proof and evidence necessary to prove plaintiff's Title VII claims are identical to those necessary to prove his § 1981 claims.[4] *Patterson,* 109 S.Ct. at 2377–78. Finally, the majority of cases which have considered this issue have applied *Patterson* retroactively. *See Brooms v. Regal Tube Co.,* 881 F.2d 412 (7th Cir.1989); *Morgan v. Kansas City Area Transp. Auth.,* 720 F.Supp. 758 (W.D.Mo.1989); *Brackshaw, supra; Williams v. National R.R. Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989).[5] In conclusion, this Court holds that *Patterson*

---

3. *See Waters v. Wisconsin Steel Works,* 427 F.2d 476 (7th Cir.1970); *Sanders v. Dobbs Houses, Inc.,* 431 F.2d 1097 (5th Cir.1970); *Young v. International Tel. & Tel Co.,* 438 F.2d 757 (3rd Cir.1971).

4. Plaintiff's counsel also argues that without the compensation attorneys receive in employment discrimination cases it is unlikely employment discrimination cases will be pursued which defeats the "private attorney general" scheme;

however, this seems to argue against the merits of *Patterson* not merely its retroactive applicability.

5. Plaintiff cites *Gillespie v. First Interstate Bank of Wisconsin, S.E.,* 717 F.Supp. 649 (E.D.Wisc. 1989) for the proposition that *Patterson* should not be applied retroactively but in that case, the case had already been tried and a jury verdict returned.

should be applied retroactively to plaintiff's case.

In *Patterson*, the Supreme Court strictly limited the application of 42 U.S.C. § 1981 in employment discrimination cases. The Court held that discrimination relating to "the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson*, at 2369. The Court reasoned that "by its plain terms, the relevant provision in § 1981 protects two rights 'the same right ... to make ... contracts' and 'the same right ... to enforce ... contracts'." [6] *Id.* at 2372. It explained that the first of these rights "extends only to the formation of a contract but not to problems that may arise later from the conditions of continuing employment," *id.* at 2372, and the second right "embraces protection of legal process, that will address and resolve contract-law claims without regard to race ... it covers wholly private efforts to impede access to the courts or obstruct non-judicial methods of adjudicating about ... discrimination by private entities." *Id.* at 2373. Thus, the question before this Court is whether any of plaintiff's § 1981 claims fall within the protection of these two specific rights.

■ For purposes of a summary judgment motion, the non-movant need not prove that his claim falls within one of these two rights guaranteed by § 1981 but need only demonstrate that a genuine question of material fact exists as to whether his claims allege a violation of one of those two rights protected by § 1981. [7] Federal Rule of Civil Procedure 56. The Second Circuit has explained that "in considering the (summary judgment) motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. Fire Insurance Company*, 804 F.2d 9, 11 (2d Cir.1986) (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Here, plaintiff contends that his claims that he was (iii) discriminatorily demoted in August, 1983, (iv) discriminatorily denied a transfer/promotion to Senior Mechanical Buyer in November, 1983, (vi) discriminatorily denied a transfer/promotion to Senior Mechanical Buyer in October, 1984, (vii) retaliated against in April, 1985, and (viii) retaliated against in May, 1985, involve rights protected by § 1981 as interpreted by *Patterson*. [8]

■ Plaintiff maintains that his claim that he was discriminatorily demoted in August, 1983 is actionable under *Patterson's* interpretation of § 1981 because by demoting plaintiff defendant "unilaterally imposed a new contract upon plaintiff." Since a demotion necessarily must occur "after the contract relation has been established," it seems that the *Patterson* decision clearly mandates that such claims are not actionable under § 1981 and must be redressed by a Title VII claim. *See Patterson*, at 2373. The Courts which have addressed this issue since *Patterson* seem to have universally viewed a demotion as a subsequent working condition. *See Jordan v. United States West District Co.*,

---

**6.** Section 1981 reads as follow:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make an enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Rev.Stat. § 1977.

**7.** The identification of material facts for summary judgment purposes "rests on the substantive law." *H.L. Hayden Co. of N.Y. v. Siemens Medical Systems*, 879 F.2d 1005 (2d Cir.1989) (*quoting Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1989)).

**8.** Plaintiff concedes that if *Patterson* is applied retroactively his § 1981 claims (ii) and (v) that he was inadequately compensated for acting as a supervisor from 1982 to August 1983 and that he was denied a transfer/promotion to Senior Mechanical Engineer in January, 1984, must be dismissed.

716 F.Supp. 1366 (D.Col.1989); *Williams v. National R.R. Passenger Corp.*, 716 F.Supp. 49 (D.D.C.1989); *Alexander v. New York Medical College*, 721 F.Supp. 587, 50 FEP Cas. 1729 (S.D.N.Y.1989). Thus, plaintiff demotion claim is not actionable under § 1981 and must be dismissed.

■ Plaintiff also contends that his claims that he was discriminatorily denied transfers/promotions to Senior Mechanical Buyer in November, 1983 and in October, 1984 are also actionable under § 1981 because "it involved the opportunity to enter a new contract with the employer." In response, defendant asserts plaintiff's argument must fail because he is attempting to characterize what was in actuality a transfer as a promotion. Were we writing on a clean slate, i.e. before *Patterson*, that the change was actually a transfer rather than a promotion might strengthen plaintiff's argument that these claims are actionable under § 1981 since that statute plainly states that it protects the right "to make ... contracts." Hence, while Title VII might be better suited to address discrimination in the formation of a contract, Congress expressly provided that § 1981 would protect the right to make contracts and it would seem that a lateral transfer to a new job would more likely require an employer and employee to enter a new contract than a promotion which is often simply a condition of the already existing contract. However, in *Patterson*, the Supreme Court seems to have contemplated that job changes like these requested by plaintiff whether characterized as lateral transfers or promotions were to be governed by the *Patterson* standard. While the *Patterson* Court adopted plaintiff's characterization that the job change she requested was a promotion rather than a lateral transfer, the job change that plaintiff requested was a move from the position of teller and file coordinator to the position of intermediate accounting clerk which might just as easily have been characterized as a lateral transfer. If there be any doubt on this score an examination of Justice Stevens dissent should remove it. In no uncertain terms he points out that the majority by its opinion is eliminating from Section 1981, the constant "reworking" of existing contracts by at will employees with their employers and the "new contracts" which are made with each amendment assigning "significant new duties" *id.* at 2396.

Therefore, the job changes requested by plaintiff fall within the *Patterson* framework and must rise "to the level of an opportunity for a new and distinct relation between the employee and the employer ..." e.g. in the case of a "refusal of [a] law firm to accept associate into partnership." *id.* at 2377. Here, the change from Senior Mechanical Engineer to Senior Mechanical Buyer does not rise to such a level. Moreover plaintiff's case is not helped by the fact that he wanted to keep the same compensation as he had as Senior Mechanical Engineer and defendant could hire a Senior Mechanical Buyer for less. In short the change sought by plaintiff here does not even measure up to the "promotion" sought by the plaintiff in *Patterson* and a fortiori does not fall within the protection of Section 1981.

■ Plaintiff's retaliation claims are only actionable under § 1981 if the retaliation alleged somehow "impeded access to the courts or obstructed non-judicial methods of adjudicating disputes." *Patterson*, at 2373. It seems that the fact retaliation for engaging in protected activity under Title VII would always chill a plaintiff's pursuit of his rights does not seem to be enough under *Patterson;* rather, *Patterson* seems to require that the retaliatory action have a closer nexus to impeding the plaintiff's access to the courts. *See Patterson* at 2373. Here, it seems that the first retaliatory action, filing a formal disciplinary report against plaintiff, would probably make the typical employee think twice before further pursuing his discrimination claim but it didn't actually impede his access to the courts and must be dismissed. However, defendant's second retaliatory act—only giving him four hours to file his claim with the EEOC Office and firing him for lateness the following work day—may be said to have obstructed plaintiff's access

to the courts.[9] Since plaintiff has demonstrated that a question of fact exists as to whether defendant fired him for failing to return from the EEOC Office by 12:45 p.m., plaintiff's § 1981 claim alleging defendant retaliated against him in May, 1985 may not be dismissed on summary judgment.

## CONCLUSION

All of plaintiff's § 1981 claims except (viii) alleging that defendant retaliated against plaintiff for engaging in protected activity by firing him on May 13, 1985 must be and hereby are dismissed.

SO ORDERED.

---

**9.** At oral argument, defendant suggested that defendant would have had to actually been successful in keeping plaintiff out of court before plaintiff would have had an actionable § 1981 claim. However, if the *Patterson* Court intended such a result, then there could never be a plaintiff alleging such § 1981 violation.