**Makram KOZAM, Plaintiff,**

**v.**

**EMERSON ELECTRIC COMPANY d/b/a Daybrite Lighting, Defendant.**

**Civ. A. No. EC 87–313–D–D.**

United States District Court, N.D. Mississippi.

May 21, 1990.

respond and post-termination administrative procedures. Thus, to the extent that the plaintiff claims the denial of due process based solely

Jim Waide, Tupelo, Miss., for plaintiff.

upon his discharge, defendants are entitled to summary judgment on this claim.

David P. Jaqua, Bruce H. Henderson, Kullman, Inman, Bee & Downing, Memphis, Tenn., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause comes on yet again for consideration of the plaintiff's claim brought under 42 U.S.C. § 1981, as well as the plaintiff's demand for a trial by jury, in the wake of another intervening Supreme Court decision.[1] The court now must consider whether the plaintiff's assertions that he was discharged because of his race and that his employer failed to offer him alternate positions with the company because of his race and in retaliation for his filing of a charge of discrimination with the EEOC state claims cognizable under § 1981 in light of *Patterson v. McLean Credit Union*, 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). *Patterson* held that § 1981 did not provide a remedy for post-contract on-the-job racial harassment. *Patterson* held

> [b]y its plain terms, the relevant provision in § 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The first of these protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment.... [T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions....
>
> The second of these guarantees ... embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race.

*Patterson*, at ——, 109 S.Ct. at 2372–73, 105 L.Ed.2d at 150–51. The opinion included, largely in *dicta*, a general discussion of the construction to be given § 1981.

The following facts will be treated as true for purposes of the instant motion to dismiss. The plaintiff, Makram Kozam, was born in Egypt, is of Arabian ancestry, and is a naturalized American citizen. He was employed by the defendant from August 22, 1978 to approximately September 22, 1986[2]—a period of some eight years and two months—in a series of positions of increasing responsibility. For the final two years of that period, he was employed as a quality control inspector. The plaintiff states that he was discharged on account of his national origin and that the defendant's assertion that he was terminated for poor job performance is pretextual. The plaintiff further claims that he sought reassignment to other available positions when he was informed of his termination, but that he was refused such alternative positions on account of his national origin and also in retaliation for his filing in the interim of a charge of discrimination with the EEOC. Plaintiff presents these claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–e *et seq.* and 42 U.S.C. § 1981. The defendant's motion seeks the dismissal of the § 1981 claims and the striking of plaintiff's jury demand. The plaintiff opposes dismissal of his § 1981 retaliation and failure to rehire claims, and further asserts that he is entitled to a trial by jury on his Title VII claims, regardless of the disposition of his § 1981 claims.

## I. RETALIATION

 The question of the continued viability of retaliation claims under § 1981 has been raised but not reached by the two courts to which this court must look for binding precedent: the United States Su-

---

1. See this court's previous opinion in this cause at 711 F.Supp. 313 (N.D.Miss.1989), reinstating plaintiff's § 1981 claim in light of *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Also, see this court's earlier opinion, rendered May 31, 1988, 1988 WL 163052, dismissing plaintiff's § 1981 claim of statute of limitations grounds, in light of *Goodman v. Lukens Steel*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

2. The defendant asserts in its answer that the plaintiff was employed until October 2, 1986.

preme Court and the Court of Appeals for the Fifth Circuit. *See Lytle v. Household Manufacturing, Inc.,* —— U.S. ——, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Rathjen v. Litchfield,* 878 F.2d 836, 842 (5th Cir.1989). Since the Supreme Court decided *Patterson,* a large number of lower courts have considered the effect of the Court's *dicta* on situations not presented by *Patterson.* Recently, this court decided *Williams v. BLM Co., Inc.,* 731 F.Supp. 231 (N.D.Miss.1990); the court held that the *dicta* in *Patterson* makes clear that § 1981 will not be read to provide a remedy for claims of discriminatory discharge. *Accord Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805 (5th Cir.1990).[3] That decision was based upon *Patterson's* clear indication that the Supreme Court would read § 1981 to exclude such claims. Similarly, as to Kozam's § 1981 claim of discriminatory discharge, the court finds the defendant's motion to dismiss to be well-taken.[4]

 The court is now faced with a more difficult question; *Patterson* does not make clear how the Court would treat a claim for retaliation brought under § 1981,[5]

3. Not all courts have felt bound by the Court's *dicta* to overturn clear Circuit precedent. *See Hicks v. Brown Group, Inc.,* 902 F.2d 630 (8th Cir.1990) (holding that discriminatory discharge claims still actionable under § 1981, despite *Patterson* ).

4. Plaintiff acknowledges, in his response to the motion to dismiss, that the language in *Patterson* is dispositive of his § 1981 claim for discriminatory discharge.

5. The court's prior decision in *Williams* that § 1981 does not cover claims of discriminatory discharge does not resolve the question of coverage of retaliatory discharge claims. Discriminatory discharge claims are brought under the "right ... to make ... contracts" protected by § 1981, while discharge in retaliation for the filing of a complaint of racial discrimination, either with the EEOC or in a court of law, implicates the "right ... to ... enforce contracts."

The court notes that, while not raised nor argued by the parties, it could cogently be argued that retaliatory discharge claims might be actionable under the "right ... to sue, be parties, [and] give evidence" provisions of § 1981. *See Fowler v. McCrory Corporation,* 727 F.Supp. 228 (D.Md.1989). This court believes that such

yet does propound general rules by which that statute is to be construed. On the other hand, there exists clear Fifth Circuit precedent, decided prior to *Patterson,* which states that § 1981 provides a remedy for retaliation for the filing of a charge of race discrimination with the EEOC or the filing of a suit alleging race discrimination. *See Goff v. Continental Oil Co.,* 678 F.2d 593, 599 (5th Cir.1982); *see also Irby v. Sullivan,* 737 F.2d 1418, 1430 n. 22 (5th Cir.1984) (questioning, but following, *Goff*); *Pinkard v. Pullman–Standard, A Division of Pullman, Inc.,* 678 F.2d 1211, 1229 n. 15 (5th Cir. Unit B, 1982). The doctrine of *stare decisis* requires that a court follow binding precedent in the absence of "special justification." *Patterson,* —— U.S. at ——, 109 S.Ct. at 2370, 105 L.Ed.2d at 148 (*citing Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 2310, 81 L.Ed.2d 164 (1984)).

In cases where statutory precedents have been overruled, the primary reason for the Court's shift in position has been the intervening development of the law, through either the growth of judicial doctrine or further action taken by Congress. Where such changes have re-

an interpretation of § 1981—that those three rights are applicable to private conduct—is so far beyond the interpretation previously given that statute as to make it untenable. Further, *Patterson* discusses the private-action application of § 1981 in terms of the making and enforcement of contracts.

The most obvious feature of the provision is the restriction of its scope to forbidding discrimination in the "mak[ing] and enforce[ment]" of contracts alone. Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief.

*Patterson* —— U.S. at ——, 109 S.Ct. at 2372, 105 L.Ed.2d at 150. It appears that § 1981's "right ... to sue. be parties, give evidence" has been generally construed as applying to government action only, though a plain-meaning consideration of the statute's language makes it difficult to understand how those three provisions are logically separated from the "right[s] ... to make and enforce contracts" which apply to private action. *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Finally, such a reading would substantially undermine the ruling in *Patterson,* limiting the scope of the remedies for private discrimination provided by § 1981. This court declines to so construe § 1981.

moved or weakened the conceptual underpinnings from the prior decision, *see,* *e.g., Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. ——, —— [109 S.Ct. 1917, ——, 104 L.Ed.2d 526] (1989); *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 322–23, 92 S.Ct. 1562, 1564–65, 32 L.Ed.2d 95 (1972), . . . the Court has not hesitated to overrule an earlier decision. *Patterson,* —— U.S. at ——, 109 S.Ct. at 2370, 105 L.Ed.2d at 148. Thus, despite the existence of prior Fifth Circuit authority, and despite the lack of even clear *dicta* in *Patterson* on the issue of the continued viability of claims for retaliation under § 1981, this court nonetheless departs from the general rule of *stare decisis* and holds that *Patterson* is controlling on the issue of retaliation. The court further holds that § 1981 does not, in light of the construction placed upon it by the Supreme Court, support the plaintiff's claim for retaliation.

The Fifth Circuit determined in *Goff* that § 1981 provided a remedy for adverse employment action taken in retaliation for the filing of a claim of discrimination. *Goff,* at 599. The rationale for that determination was that it was necessary to imply such a remedy into the statute to avoid the evisceration of the rights protected by § 1981. Under the *Patterson* ruling, § 1981 does not provide a remedy for the allegedly discriminatory discharge of which the plaintiff complained to the EEOC[6]; it would be anomalous to hold that the plaintiff's underlying claim is not actionable under § 1981 but to hold on the other hand that protection against retaliation for the filing

of the charge is a necessary corollary to the statute.[7] The rationale of the Fifth Circuit in implying the remedy for retaliatory discharge is thus not applicable to the case at bar.[8] The court therefore holds that, despite the dictates of *stare decisis,* the *Patterson* decision may supersede applicable Fifth Circuit authority on the issue of retaliation under § 1981.

The analysis does not stop there, however; the court must determine whether, in light of *Patterson,* § 1981 provides a remedy for retaliation. In *Patterson,* the Court was not presented with a claim under the "right . . . to . . . enforce contracts" provision of § 1981.[9] Nevertheless, the Court explained that such right

> embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices. It also covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, such as labor unions, in enforcing the terms of a contract. . . . The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through le-

---

6. *See Williams, supra; Lavender, supra.*

7. The court does not thereby create a requirement that the plaintiff prevail on his or her claim of discrimination in the initial firing, but only that the matter alleged be one which is within the general scope of the statute. In the instant case, *Patterson* clearly excludes post-contractual discrimination from the scope of § 1981.

8. The district court in *English v. General Development Corp.,* 717 F.Supp. 628 (N.D.Ill.1989) distinguished other cases decided by courts in that district which denied relief for retaliation claims under § 1981. The *English* case involved a plaintiff allegedly discharged for complaining about his employer's racial discrimination in

hiring others. The court held that the discrimination was conduct proscribed by § 1981. The enforcement clause of § 1981 therefore provided a remedy for retaliation under the limited facts of that case. This court does not reach this question.

9. The plaintiff's retaliation claim is clearly not actionable under the "make contracts" provision of § 1981, in light of *Patterson.* The plaintiff does claim that the failure to place him in another position was the result of racial discrimination, and claims that such discrimination violated the "make contracts" clause; the court considers that claim *infra.*

gal process his or her established contract rights. As Justice White put it with much force in *Runyon*, one cannot seriously "contend that the grant of the other rights enumerated in § 1981, [that is, other than the right to "make" contracts,] *i.e.*, the rights 'to sue, be parties, give evidence,' and '*enforce* contracts' accomplishes anything other than the removal of *legal* disabilities to sue, be a party, testify or enforce a contract. Indeed, it is impossible to give such language any other meaning." [*Runyon v. McCrary*,] 427 U.S. [160], at 195, n. 5 [96 S.Ct. 2586, 2606 n. 5, 49 L.Ed.2d 415 (1976)] (dissenting opinion). *Patterson*, —— U.S. at ——, 109 S.Ct. at 2373, 105 L.Ed.2d at 151 (emphasis original).[10]

■ Several courts which have held § 1981 inapplicable to claims of retaliation have relied in whole or in part on the argument that, as the plaintiff's discrimination claim had in fact been brought before the court, any adverse actions of the employer did not act to bar the plaintiff from the courthouse and thus the plaintiff did not state a claim for retaliation. *See Alexander v. New York Medical College*, 721 F.Supp. 587, 588 n. 5 (S.D.N.Y.1989) (Court argued that "[a] retaliatory discharge in no way obstructs access to judicial redress, as is evidenced by [plaintiff's] presence before this court."); *Hall v. County of Cook, State of Illinois*, 719 F.Supp. 721, 725 n. 2 (N.D.Ill.1989); *Dangerfield v. Misson Press*, not in F.Supp., 1989 WL 88199 (N.D. Ill.1989) [*B.B.*] (court held that access to the court is not impaired by retaliation.)[11]; *Gregory v. Harris–Teeter Supermarkets,*

*Inc.*, 728 F.Supp. 1259 (W.D.N.C.1990) (access to court not impaired under facts as pled, as the plaintiff is before the court.); *Matthews v. Northern Telecom, Inc.*, 1989 WL 131343 (S.D.N.Y. Nov. 1, 1989) (Available on LEXIS, May 14, 1990, GENFED library, 2Dist file) (employer has hindered but not obstructed plaintiff's access to court.). This court declines to adopt this argument. It is the opinion of the court that the punishment of an employee for his or her complaints of racial discrimination is the heart of a claim for retaliation, whether or not that punishment is ultimately successful in dissuading that employee from filing a claim. It is the *attempt* to dissuade the employee by adverse employment action from enforcing an established contract right that is the gravamen of the enforcement clause of § 1981. The Supreme Court's statement that "[t]he right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employe's ability to enforce through legal process his or her established contract rights"[12] should not be read to require that the effort to keep the plaintiff out of court be successful; the employee's access to legal process is impaired when it is obstructed, whether or not the employee eventually overcomes the obstacles placed in his or her way. *See Franceschi v. EDO Corporation*, 736 F.Supp. 438 (E.D.N.Y. 1990) (Criticizing position that, to state § 1981 claim, employee must be successfully precluded from reaching court).

Though nearly as many courts presented with this question have held that § 1981 provides a remedy for retaliation as have

**10.** As pointed out by at least one other court, *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989), the Supreme Court's opinion in *Patterson* is not particularly clear on several points. The Court appears to contradict itself, citing Justice White's dissent in *Runyon* immediately after holding that the "enforce contracts" clause "also covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations...." This court is not certain what purpose the citation to the *Runyon* dissent serves in *Patterson;* as the Court decided not to overrule *Runyon*, despite what some members of the Court deemed to be persuasive arguments to the contrary, this citation

may be nothing more than a recognition of those arguments. As the Court clearly held that § 1981 does "prohibit[ ] racial discrimination in the making and enforcement of private contracts," *Patterson*, —— U.S. at ——, 109 S.Ct. at 2369, 105 L.Ed.2d at 147, this court must construe the citation of Justice White's dissent in conformity with that clear holding.

**11.** *See English v. General Development Corp.*, 717 F.Supp. 628 (N.D.Ill.1989) (distinguishing *Dangerfield* ).

**12.** *Patterson*, —— U.S. at ——, 109 S.Ct. at 2373, 105 L.Ed.2d at 151.

held to the contrary, this court is persuaded the argument adopted by the Eleventh Circuit in *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527 (11th Cir. 1990).[13] The court of appeals held that *Patterson* does not allow a cause of action for retaliation against a plaintiff for the filing of a charge of discrimination with the EEOC. The facts before the court in *Sherman* were that the plaintiff had been terminated by the defendant, had taken a job with another employer in the area, and had thereafter filed a charge of discrimination with the EEOC against his former employer. There was compelling evidence that the former employer had approached the plaintiff's new employer and procured plaintiff's termination from his new job in retaliation for the plaintiff's filing of the charge with the EEOC. The court stated

> [t]he Court in *Patterson* explained that "[t]he right to enforce contracts does not ... extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." [491] U.S. at ——, [105 L.Ed.2d at 151,] 109 S.Ct. at 2373. Thus, an employer's retaliatory conduct falls under section 1981 only when the employer aims to prevent or discourage an employee from using legal process to enforce a specific contract right. Section 1981 does not apply when an employer retaliates against an employee who has brought a suit alleging post-contractual discrimination that is unrelated to specific contract rights. In the case before us, [plaintiff] alleges that [defendant] retaliated against him for filing an EEOC complaint. [Plaintiff's] EEOC complaint, however, did not relate to any right created by his employment contract....

*Sherman,* at 1535.[14] *Accord Williams v. National Railroad Passenger Corp.*, 716

**13.** In so holding, this court perforce declines to follow the well-reasoned decisions of several other courts. In *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989), Judge Posner argued in favor of the continuing viability of retaliation claims under § 1981, but nonetheless reserved the issue for another case. The court stated that

> it can be said that someone who retaliates against a person who has a claim of employment discrimination that might be actionable under section 1981 (and Malhotra may have such a claim, based on the denial of promotions that he sought) is interfering with that person's *ability* to make and enforce contracts on the same footing with white persons, *cf. Patterson v. McLean Credit Union, supra,* 109 S.Ct. at 2373, and such interference could be thought itself a violation of section 1981.

*Malhotra,* at 1313 (emphasis original).

In *Fowler v. McCrory Corporation,* 727 F.Supp. 228 (D.Md.1989), the district court held that, not only does a retaliatory discharge violate the enforcement clause of § 1981, but where a plaintiff refuses to implement a racially discriminatory hiring policy, retaliation violates the "give evidence" provision of § 1981 as well. The court, however, held in *dicta* that claims of retaliation for filing a claim with the EEOC would not be cognizable under § 1981, because of the relief provided by Title VII.

The Court of Appeals for the Tenth Circuit has held, without discussion, that retaliation claims under § 1981 are still viable in the wake of *Patterson. Jackson v. City of Albuquerque,* 890 F.2d 225, 236 n. 15 (10th Cir.1989). Three other district courts within the Tenth Circuit have independently reached similar results. *Booth v. Terminix Intern. Inc.,* 722 F.Supp. 675 (D.Kan.

1989); *Jordan v. U.S. West Direct Co.,* 716 F.Supp. 1366 (D.Colo.1989); *Yates v. Western Electric Co. Inc.,* 1989 WL 152222 (D.Kan. Nov. 30, 1989) (Available on WESTLAW, May 14, 1990, ALLFEDS Library). These courts have held that retaliation does interfere with the right to enforce the employment contract, and that such claims are thus actionable. This view is stated succinctly in the *Jordan* case. The court therein stated:

> The right to enforce contracts extends to private efforts to obstruct nonjudicial methods of adjudicating disputes involving discrimination. Plaintiff alleges that he was retaliated against because he complained of discrimination and instigated an investigation regarding his charges. These allegations fall within the coverage afforded by the right to enforce contracts contained in § 1981.

*Jordan,* at 1368–69.

*See also Franceschi v. EDO Corporation,* 736 F.Supp. 438 (E.D.N.Y.1990).

**14.** This reasoning seems to leave open the possibility of a retaliation claim under § 1981 where the EEOC complaint involves a specific contractual right, as where the contract of employment itself provides that the employer will not discriminate on the basis of race. This is to be distinguished, however, from the argument that laws against employment discrimination should be read into every contract of employment. This court does not here address the situation in which the employer retaliates for the employee's pursuit of an established contract right not to be discriminated against on the basis of race.

The court also notes that the filing of an EEOC claim does not itself necessarily implicate

F.Supp. 49 (D.D.C.1989) (Court accepted notion that retaliation for bringing racial discrimination claims might be actionable in some cases, but dismissed claim as not alleging impediment to contract right). Mr. Kozam likewise asserts no right arising from his contract which was purported to have been breached by the discrimination allegedly committed. The EEOC charge, the basis of his claim of retaliation, referred to the plaintiff's termination from his position as quality control inspector, assertedly because of his race. This court is aware of no claim related to that EEOC charge—nor of any claim related to any aspect of the instant action—that the termination breached any term of plaintiff's contract of employment. The plaintiff's claim of retaliation is not actionable under § 1981. *See also Jackson v. GTE Directories Service Corporation,* 734 F.Supp. 258 (N.D.Tex.1990).

## II. DISCRIMINATORY FAILURE TO OFFER ALTERNATE POSITION

■ The plaintiff claims that he was informed that he was not to be employed any longer as a quality control inspector, and thereafter was rejected for other positions within the company for which he was allegedly qualified. Plaintiff has filed a claim that the defendant's failure to offer him an alternate position within the company was based on plaintiff's race, and that such discrimination is actionable under § 1981. The plaintiff asserts that such other positions were available within the company at the time of his discharge and immediately thereafter. The defendant admits that officials of the plaintiff's union attempted to secure an alternate position for the plaintiff after the plaintiff was discharged. This court is of the opinion that the plaintiff's allegations state a claim under

§ 1981's "right ... to make ... contracts" provision, to the extent that the refusal to offer another position occurred after the termination of the plaintiff's initial contract of employment by the defendant.

Section 1981 clearly provides a remedy for the refusal, based on race, to enter into a contract. *See Runyon, supra. Patterson* recognizes that "the right ... to make ... contracts" prohibits, when based on race, the refusal to enter into a contract with someone...." *Patterson* — U.S. at ——, 109 S.Ct. at 2369, 105 L.Ed.2d at 147. If, as he claims, the plaintiff had been discharged before he sought and was refused other positions within the company, such refusal to enter into subsequent contracts would be within the scope of § 1981. "But until the plaintiff has actually qualified and applied for a promotion, a termination does not involve the opportunity to enter a new contract. *See Patterson,* 109 S.Ct. at 2378." *Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805, 809 (5th Cir.1990).

From this general rule, the Supreme Court distinguished the promotion of an existing employee, except where such "promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer...." *Patterson* — U.S. at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. The Court did not define what constitutes a "new and distinct relation,"[15] but as the alternate positions here sought were assertedly first sought after plaintiff's termination, this court need not decide whether the alternate positions themselves were sufficiently different from the plaintiff's job as a quality control inspector as to represent a "new and distinct relation between the employee and employ-

---

the enforcement of such a contract right, but further notes that such a filing is a prerequisite to pursuit of a related claim for discrimination under Title VII. It can be cogently argued that interference with one remedy may, as a practical matter, interfere with the other. Again, the court does not address this issue.

**15.** Several district courts within the Fifth Circuit have considered this question. *See e.g. Jackson,*

*supra; Guzman v. El Paso Natural Gas Co.,* 1990 WL 41429 (W.D.Tex. January 8, 1990) (Available on LEXIS, GENFED library, 5 Dist file); *Doffoney v. Board of Trustees For Beaumont Ind. School Dist.,* 731 F.Supp. 781 (E.D.Tex.1990); *Mayfield v. Micon System, Inc.,* 729 F.Supp. 53 (E.D.Tex.1990); *Greggs v. Hillman Distributing Co.,* 719 F.Supp. 552, 53 Empl.Prac.Dec. (CCH) P39,793 (S.D.Tex.1989).

er." [16]

## III. RIGHT TO JURY ON TITLE VII CLAIMS

■ The plaintiff argues that he is entitled to a trial by jury under Title VII. In support of this position, the plaintiff cites several passages from recent Supreme Court cases, and a decision of the district court for the Northern District of Alabama. *See Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); *Beesley v. The Hartford Fire Insurance Co., Inc.*, 723 F.Supp. 635 (N.D.Ala.1989). The Supreme Court cases cited by plaintiff do not persuade this court to ignore prior Fifth Circuit precedent. The court is not convinced that the Supreme Court intended thereby to overturn prior established circuit precedent on the issue.[17] In this Circuit, it is well established that Title VII claims are to be tried without a jury. *See e.g. Davis v. West Community Hospital*, 786 F.2d 677 (5th Cir.1986); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969). This court accordingly declines to adopt the position advanced by the plaintiff, and holds that the plaintiff is entitled to a jury only on his § 1981 claim.

## IV. CONCLUSION

The plaintiff alleges that he was retaliated against in his employment because he filed a charge of discrimination with the EEOC. The plaintiff allegedly had been discharged from his position with Daybrite Lighting because of his race. There is no indication that the EEOC complaint was related to the plaintiff's attempt to enforce an established contractual right. It is therefore the opinion of this court that § 1981, construed in light of the Supreme Court's ruling in *Patterson v. McLean Credit Union, supra*, does not provide a remedy for the retaliation claimed by the plaintiff. The court does, however, find that the plaintiff's claim for the defendant's failure to rehire him because of his race falls within the scope of the "right ... to make ... contracts" of § 1981. The court further holds that trial by jury is not available for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, *et seq.* Accordingly, the court grants in part and denies in part the defendant's motion to dismiss plaintiff's § 1981 claims and to strike the plaintiff's jury demand. The court further denies plaintiff's motion to reconsider the denial of a jury to hear plaintiff's Title VII claims. An order in conformity herewith shall issue.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND TO STRIKE JURY DEMAND AND DENYING PLAINTIFF'S MOTION TO RECONSIDER DENIAL OF JURY FOR TITLE VII CLAIMS

Pursuant to a memorandum opinion this day entered, it is hereby Ordered

(1) That the defendant's motion to dismiss plaintiff's claims under 42 U.S.C. § 1981 and to strike the jury demand therefor, to the extent that such claims involve allegations of retaliation for the filing of a

---

**16.** The defendant does not argue that the plaintiff might not be entitled to a jury trial on his § 1981 claims. This court therefore does not consider the effect, if any, of *Rivera v. City of Wichita Falls*, 665 F.2d 531, 534 n. 4 (5th Cir. 1982) and its progeny. *See Watson v. Fort Worth Bank & Trust*, 798 F.2d 791, 794 n. 4 (5th Cir.1986) *vacated on other grounds*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Earlie v. Jacobs*, 745 F.2d 342, 344 (5th Cir. 1984); *See also Lynch v. Pan American World Airways, Inc.*, 475 F.2d 764, 765 (5th Cir.1973). It should be noted that a recent Supreme Court decision throws the applicability of this line of cases into doubt. *Lytle v. Household Manufac-*

*turing, Inc.,* —— U.S. ——, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) (holding that doctrine of collateral estoppel is not applicable to deny trial by jury where court erroneously dismissed § 1981 claim and decided the equitable claims under Title VII. In order for the Court of Appeals to have held the doctrine of collateral estoppel to have been applicable, it seems that the facts relied on in bringing the two claims must logically have been identical).

**17.** *See Lytle, supra* (accepting, without discussion, the proposition that a jury is not available to hear claims under Title VII).

charge of race discrimination with the EEOC, is Granted, and that such claims of retaliation brought under 42 U.S.C. § 1981 are Dismissed;

(2) That the defendant's motion to dismiss plaintiff's claims brought under 42 U.S.C. § 1981 and to strike the jury demand therefor, to the extent that such claims involve allegations of discriminatory refusal to rehire the plaintiff after his termination, is Denied; and

(3) That the plaintiff's motion to reconsider the denial of a jury to hear plaintiff's Title VII claims is Denied.

ORDERED AND ADJUDGED.