William M. LAVENDER,
Plaintiff–Appellant,

v.

V & B TRANSMISSIONS & AUTO
REPAIR, Defendant–Appellee.

Tony Ray MORTON,
Plaintiff–Appellant,

v.

V & B TRANSMISSIONS & AUTO
REPAIR, Defendant–Appellee.

No. 89–4215.

United States Court of Appeals,
Fifth Circuit.

April 6, 1990.

Richard Grindstaff, Columbus, Miss., for plaintiff-appellant.

J. Tyson Graham, Graham & Segrest, Columbus, Miss., for defendant-appellee.

Before THORNBERRY, POLITZ, and JOLLY, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiffs appeal the district court's dismissal of their employment discrimination suit alleging that they were discharged in violation of 42 U.S.C. § 1981. Finding that *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) should be given retroactive application, we dismiss the claims for failing to state a cause of action under section 1981.

Facts and Procedural History

Plaintiffs William W. Lavender and Tony Ray Morton, who are both white males,

allege that defendant V & B Transmissions & Auto Repair (V & B), a minority-owned business, terminated them on the basis of race in violation of section 1981. Plaintiffs began working for V & B on March 1, 1987. Like all employees, they were hired on a probationary basis for the first 90 days. Under Mississippi law, this meant that V & B could fire the employee for any reason or no reason at all, so long as the dismissal was not prompted by racial discrimination or some other illegal reason. *See Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874, 874–75 (Miss.1981). After the 90–day probationary period expired, V & B would consider hiring an employee on a permanent basis, which meant V & B would agree to fire the employee only for cause.

The plaintiffs were employed by V & B until May 8, 1987, when they were terminated. The termination was made by letter, and occurred well within the 90–day probationary period. On May 12 and May 22, 1987, plaintiffs filed separate complaints in Mississippi state court alleging breach of contract and libel and slander. On June 16, 1987, V & B removed both actions to federal court on the basis of diversity jurisdiction. The district court consolidated plaintiffs' claims on December 16, 1988. In April 1988 the plaintiffs filed a motion to amend their complaint to include an allegation that their employment was terminated because of their race in violation of 42 U.S.C. § 1981. Immediately prior to trial, plaintiffs dismissed their breach of contract and libel and slander claims, leaving only their section 1981 claim.

Jury trial began in February 1989. After reviewing the evidence, the district court granted V & B's motion for a directed verdict. The plaintiffs brought this appeal.

## Discussion

I. Retroactivity of *Patterson v. McLean*

■ After the plaintiffs filed notice of appeal in this case, the Supreme Court decided *Patterson v. McLean Credit Union.* The Court in *Patterson* determined that employment discrimination claims alleging racial harassment are "not actionable under § 1981, which covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process. Rather, such conduct is actionable under the more expansive reach of Title VII...." *Patterson,* 109 S.Ct. at 2374. We requested the parties to submit additional briefs addressing the retroactive application of *Patterson* and its effect on this case. V & B urges this court to apply *Patterson* retroactively and dismiss the plaintiffs' claims.

A panel of this court has recently considered the retroactive effect of *Patterson.* *See Carroll v. General Accident Ins. Co. of Am.,* 891 F.2d 1174 (5th Cir.1990). In *Carroll,* we observed the general rule that a federal appellate court apply the law that is in effect at the time of its decision. *Id.* at 1175. In deciding whether to depart from the general rule, we evaluate the three factors set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

The first factor is that "the decision to be applied retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* at 106, 92 S.Ct. at 355 (citation omitted). In *Carroll,* we reviewed a number of precedents in this circuit and determined that it is "reasonably clear that *Patterson* established a new principle of law, at least in this circuit." *Carroll,* 891 F.2d at 1176. As a new principle of law, this factor weighs in favor of nonretroactivity.

The second *Chevron* factor requires us to look "to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Chevron,* 404 U.S. at 107, 92 S.Ct. at 355. The purpose in *Patterson* of limiting section 1981 was two-fold. First, the Court pointed to the narrow language of section 1981 limiting its application to the making and

enforcement of contracts. *Patterson*, 109 S.Ct. at 2372–73. Second, the Court found that a broader interpretation of section 1981 would interfere with the elaborate administrative procedures prescribed by Congress under Title VII, thereby upsetting the delicate balance between employee and employer rights struck by Title VII. *Id.* at 2374–75 & n. 4. Considering both these purposes, we find that applying *Patterson* retroactively would limit section 1981 to its proper scope and avoid "undermining the detailed and well-crafted procedures for conciliation and resolution of Title VII claims." *Id.* at 2374. Therefore, this factor weighs in favor of retroactivity. *Carroll*, 891 F.2d at 1176.

The third and final factor in this case requires us to weigh the inequity imposed by retroactive application. We recognize that the plaintiffs have incurred the expenses of both trial and this appeal. Although it appears unjust to limit the reach of section 1981 given its prior interpretation, it would also be unjust to subject V & B to a cause of action which, as the Supreme Court has now held, is not permitted under section 1981. *Cf. Carroll*, 891 F.2d at 1176–77. Furthermore, this circuit has emphasized that "the purpose of the rule should be given greater weight than the extent to which the parties relied on the law that existed before that rule was announced." *Williams v. Phil Rich Fan Mfg. Co.*, 552 F.2d 596, 600 (5th Cir.1977); *In re S/S Helena*, 529 F.2d 744, 748 (5th Cir.1976). Therefore, even though plaintiffs may have relied on prior precedent, this reliance is outweighed by the fact that retroactivity effectively advances the purposes of the new rule set out in *Patterson*.

In addition, we find that the plaintiffs' reliance is not compelling enough to establish that retroactivity would be inequitable. Although the plaintiffs point out that a Title VII action is now foreclosed, this is not a case in which the plaintiffs decided to forego a Title VII action in reliance on our prior interpretation of section 1981. In fact, plaintiffs filed their original claim in state court alleging breach of contract and libel and slander. Only after a year had nearly passed and V & B removed the case

to federal court did they decide to pursue a claim of racial discrimination. By this time, of course, the limitation period for Title VII had expired.

In *Patterson*, the plaintiff also filed a section 1981 action presumably because the Title VII limitation period expired. *See Patterson v. McLean Credit Union*, 805 F.2d 1143, 1144 n.* (4th Cir.1986). Rather than announce a rule of prospective application, the Supreme Court applied the narrower interpretation of section 1981, and we can see no reason why this case should be different. *See Williams*, 552 F.2d at 600 n. 9. Therefore, given the nature of the original actions in state court and the fact that plaintiffs did not rely on prior precedent to forgo a Title VII action, we find that the retroactivity would not be inequitable. Weighing this factor with the other *Chevron* factors, we conclude that *Patterson* should be applied retroactively.

## II. The Section 1981 Claims under *Patterson*

To state a claim under section 1981, the plaintiffs' claim must involve improper "conduct at the initial formation of the contract" or "conduct which impairs the right to enforce contract obligations through legal process." *Patterson*, 109 S.Ct. at 2374. In addition, a claim for failure to promote is actionable under section 1981 if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Id.* at 2377. At issue here is whether the plaintiffs' claims involve conduct at the initial formation of the contract or the denial of an opportunity to enter into a new contract.

The plaintiffs first argue that section 1981 encompasses termination claims. One district court has held that discriminatory termination is actionable under 1981, reasoning that "termination is part of the making of a contract." *Padilla v. United Air Lines*, 716 F.Supp. 485 (D.Colo.1989). We cannot agree. Termination neither involves "the formation of contracts" nor an "opportunity to enter into a new contract

with the employer." *Patterson*, 109 S.Ct. at 2377. The Supreme Court made clear that

> [t]he statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Id.* at 2373. Because the contract here was already established, the termination amounted to postformation conduct. As such, it is not actionable under section 1981. *See Overby v. Chevron USA, Inc.*, 884 F.2d 470, 473 (9th Cir.1989).

Alternatively, plaintiffs argue that the change from probationary status to permanent status was a promotion involving the opportunity to enter into a new contract. The test adopted by the Supreme Court is that a claim for failure to promote is actionable "[o]nly where the promotion rises to the level of an opportunity to enter into a new and distinct relation between the employee and employer." *Id.* 109 S.Ct. at 2377.

We need not reach this issue, however, because the plaintiffs were fired during the 90–day probationary period. As such, the conduct that led to the plaintiffs' termination occurred during employment rather than during the formation of a new contract. Thus, their claim involves termination rather than a failure to promote. Of course like all terminations, this termination precludes any possibility of future promotion and an opportunity to enter into a new contract. But until the plaintiff has actually qualified and applied for a promotion, a termination does not involve the

opportunity to enter into a new contract. *See Patterson*, 109 S.Ct. at 2378.

### III. Failure to Grant Summary Judgment

Finally, the plaintiffs submit that the district court erred by denying their motion for summary judgment. The plaintiffs argue that because V & B failed to answer some of the plaintiffs' requests for admissions in a timely manner, V & B should be deemed to have admitted those matters. V & B's answers, however, were only 10 days late, and the district court sanctioned V & B and awarded attorney's fees to the plaintiffs. Under these circumstances, refusing to grant summary judgment was not an abuse of discretion.

### Conclusion

In sum, our analysis of the *Chevron* factors leads us to the conclusion that the rule in *Patterson* should be applied retroactively. In accordance with that finding, we also hold plaintiffs have failed to state a cause of action under section 1981, since their claim does not involve an opportunity to enter into a new contract. Finally, we find that the district court's refusal to grant summary judgment was not an abuse of discretion. Accordingly, the denial of summary judgment is AFFIRMED, and the plaintiffs' section 1981 claims are hereby DISMISSED.