Gary McKNIGHT, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION, Dennis
Cronk, and Gilbert Amborn, Defendants-Respondents.

Court of Appeals

*No. 89-2070. Submitted on briefs May 3, 1990.—Decided June
29, 1990.*

(Also reported in 458 N.W.2d 841.)

250

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert J. Gingras* and *Mary E. Kennelly* of *Fox, Fox, Schaefer & Gingras, S.C.* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Maureen A. McGinnity* and *Lawrence T. Lynch* of *Foley & Lardner* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Gary McKnight appeals from the dismissal of a racial-harassment claim that he brought under 42 U.S.C. sec. 1981 in February of 1983. The trial court concluded that the claim was barred by *Patterson v. McLean Credit Union,* 491 U.S. —, 109 S. Ct. 2363, 105 L. Ed.2d 132 (1989). We agree, and affirm.

## I.

McKnight worked as a manufacturing supervisor for the A.C. Spark Plug division of General Motors from August of 1978 until he was laid off in December of 1981. His racial-harassment claim under 42 U.S.C. sec. 1981 was tried to a jury in 1985. The jury was asked whether any of the defendants "engage[d] in a pattern of adverse

treatment of the plaintiff which taken as a whole was excessive and reprehensible." It answered "no." This court reversed. *McKnight v. General Motors Corp.*, 143 Wis. 2d 67, 420 N.W.2d 370 (Ct. App. 1987) *(McKnight I).* Drawing an analogy to *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986), which involved a claim of sexual harassment brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000e *et seq.,* and which was decided after McKnight's trial, we held that the discrimination need only have created a "hostile or abusive work environment," *see id.,* 477 U.S. at 66, and that, therefore, McKnight did not have to prove that the defendants' actions were "excessive and reprehensible." *McKnight I,* 143 Wis. 2d at 71, 420 N.W.2d at 372. In *McKnight I* we were not asked to, and did not, consider whether McKnight's racial-harassment claim was cognizable under 42 U.S.C. sec. 1981.

Before McKnight's case could be retried, the United States Supreme Court decided *Patterson. Patterson* held that 42 U.S.C. sec. 1981 protects the right of all persons "to make and enforce contracts," but is not "a general proscription of racial discrimination in all aspects of contract relations," and thus does not encompass such post contract-formation conduct as employment-related discrimination. *Patterson,* 109 S. Ct. at 2375, 105 L. Ed.2d at 154. Rather, such discrimination is actionable under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000e *et seq. Patterson,* 109 S. Ct. at 2374, 105 L. Ed.2d at 152–153.

Arguing that *Patterson* barred McKnight's racial-harassment claim under 42 U.S.C. sec. 1981, General Motors and the individual defendants moved for summary judgment, which the trial court granted. Although McKnight does not dispute that his allegations

of employment-related racial harassment fall within *Patterson*'s analysis, he argues that it should not be applied to his case.[1]

## II.

Courts generally apply the law as it is at the time of decision rather than at the time of the transaction underlying the lawsuit. *See Pagelsdorf v. Safeco Ins. Co. of America,* 91 Wis. 2d 734, 744–745, 284 N.W.2d 55, 60–61 (1979); *Hanson v. Madison Serv. Corp.,* 125 Wis. 2d 138, 140–141, 370 N.W.2d 586, 588 (Ct. App. 1985); *cf. Mullen v. Coolong,* 153 Wis. 2d 401, 451 N.W.2d 412 (1990) (trial court did not abuse its discretion under Rule 806.07(1)(h), Stats., in granting relief from a judgment because of a subsequent change in controlling law even though the judgment had been affirmed); *State v. Brady,* 130 Wis. 2d 443, 447–448, 388 N.W.2d 151, 153–154 (1986) (despite the law of the case doctrine, trial court may reconsider an order that has been affirmed when there has been a change in the controlling law). Indeed, "[a] decision is given prospective effect only when there are compelling judicial reasons for doing so." *Bell v. County of Milwaukee,* 134 Wis. 2d 25, 31, 396 N.W.2d 328, 331 (1986).

---

[1]The trial court also denied McKnight's request to assert an additional claim based on an alleged discriminatory layoff. McKnight's appellate brief does not discuss this aspect of the trial court's order, and thus he has abandoned the issue. *See Reiman Assocs. v. R/A Advertising,* 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981). The United States Court of Appeals for the Eighth Circuit has held in a post-*Patterson* decision that a racially-discriminatory discharge from employment is actionable under 42 U.S.C. sec. 1981. *Hicks v. Brown Group, Inc.,* 902 F.2d 630, 638–648 (8th Cir. 1990).

There are circumstances, however, when a judicial decision should not govern claims that are based on transactions that predate the ruling. *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 108-109, 280 N.W.2d 757, 760-761 (1979). Among the factors to be considered is whether:

> —the decision "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed";
>
> —retrospective application will " 'further or retard [the] operation' " of the rule established or recognized by the decision;
>
> —retrospective application " 'could produce substantial inequitable results . . ..' "

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 106-107 (1971) (citations omitted), adopted by *Kurtz,* 91 Wis. 2d at 108-109, 280 N.W.2d at 760-761. We discuss these factors in turn.

## A. New Principle of Law

A decision is not a new principle of law under the *Chevron* analysis unless it has overruled "clear past precedent on which litigants may have relied," or has decided "an issue of first impression whose resolution was not clearly foreshadowed." *Id.,* 404 U.S. at 106. A decision has overruled "clear past precedent" when the supplanted rulings were, in fact, *precedent;* that is, *binding* on the tribunal faced with the decision of whether to apply the new decision retrospectively. Thus, in *Chevron,* the Supreme Court declined to apply retrospectively *Rodrigue v. Aetna Casualty & Surety*

254

*Co.,* 395 U.S. 352 (1969), which made state law applicable to injuries sustained on the Outer Continental Shelf, when that would have interposed as a bar Louisiana's one-year statute of limitations in a federal-court action that was pending at the time, because *Rodrigue* had "effectively overruled a long line of decisions by the Court of Appeals for the Fifth Circuit," in which the district court was located. *Chevron,* 404 U.S. at 107. We analyze *Patterson* against this background.

42 U.S.C. sec. 1981 secures to "[a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . .." This clear language "prohibits racial discrimination in the *making* and *enforcement* of private contracts." *Runyon v. McCrary,* 427 U.S. 160, 168 (1976) (emphasis added). The United States Supreme Court has never held that it encompasses *post* contract-formation racial discrimination between the contracting parties, as long as that discrimination did not "impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations," because the "right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established." *Patterson,* 109 S. Ct. at 2373, 105 L. Ed.2d at 150-151. The other rights granted by the statute remove " '*legal* disabilities to sue, be a party, testify or enforce a contract,' " *Patterson,* 109 S. Ct. at 2373, 105 L. Ed.2d at 151 (quoting *Runyon,* 427 U.S. at 195 n.5 (White, J., dissenting) (emphasis by Justice White)). As has been recognized elsewhere, rather than

striking a new path in the law, *Patterson* merely "clarified" and "confirmed" the actual scope of 42 U.S.C. sec. 1981. *See Overby v. Chevron USA, Inc.,* 884 F.2d 470, 472 (9th Cir. 1989). Indeed, *Patterson* affirmed the decisions of both the district court and the court of appeals that a claim for post contract-formation employment-related racial harassment was not actionable under 42 U.S.C. sec. 1981. *See Patterson,* 109 S. Ct. at 2369, 105 L. Ed.2d at 146–147.[2]

Significantly, no appellate decision in Wisconsin has ever sanctioned the use of 42 U.S.C. sec. 1981 to redress post contract-formation employment-related racial harassment, other than *McKnight I,* which did not discuss the issue and upon which McKnight obviously could not have relied in commencing his lawsuit. Nevertheless, McKnight contends that *Patterson* wrote new law for Wisconsin, and points to *Williamson v. Handy Button Machine Co.,* 817 F.2d 1290 (7th Cir. 1987), and *Hunter v. Allis-Chalmers Corp.,* 797 F.2d 1417 (7th Cir. 1986), which upheld sec. 1981 awards for employment-related racial harassment, albeit without analyzing whether the claims were cognizable under the statute. As with *McKnight I,* however, they are hardly decisions upon which McKnight could have relied since they postdate McKnight's filing of this action in 1983. Additionally, while there were other federal court

---

[2]Even Justice Brennan's dissent in *Patterson* acknowledged the confining strictures of sec. 1981's clear language. Thus, he attempted to squeeze coverage for post contract-formation employment-related racial harassment into the statute by arguing that the harassment was actionable under sec. 1981 if "the acts constituting harassment were sufficiently severe or pervasive as effectively to belie any claim that the contract was entered into in a racially neutral manner." *Patterson,* 109 S. Ct. at 2389, 105 L. Ed.2d at 171.

decisions permitting claims based on post contract-formation employment-related racial harassment that antedated the commencement of McKnight's action, neither these decisions nor those by the federal courts in the Seventh Circuit are precedent in the Wisconsin state courts. *See State v. Webster,* 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474, 478 n.4 (1983) (state courts are bound by decisions of the United States Supreme Court interpreting federal law, not those of the lower federal courts); *see also United States ex rel. Lawrence v. Woods,* 432 F.2d 1072, 1075-1076 (7th Cir. 1970), *cert. denied,* 402 U.S. 983; *Owsley v. Peyton,* 352 F.2d 804, 805 (4th Cir. 1965). This case thus differs from the recent decisions by the United States Court of Appeals for the Fifth Circuit in *Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805 (5th Cir. 1990) and *Carroll v. General Accident Insurance Co. of America,* 891 F.2d 1174 (5th Cir. 1990), which, although they decided that *Patterson* would be applied retrospectively in light of the second and third *Chevron* factors, *Carroll,* 891 F.2d at 1176-1177; *Lavender,* 897 F.2d at 806-807, concluded that *Patterson* established a new rule of law, "at least in this circuit," because the Fifth Circuit had previously held that 42 U.S.C. sec. 1981 and Title VII were "parallel means of redressing employment discrimination," *Carroll,* 891 F.2d at 1176; *Lavender,* 897 F.2d at 806. For the purpose of determining whether *Patterson* should be applied to McKnight's action, we conclude that *Patterson* did not interpose a new principle of law in Wisconsin.[3]

---

[3] *Williamson* is, of course, precedent for the United States district courts in Wisconsin. In *Gillespie v. First Interstate Bank of Wisconsin Southeast,* 717 F. Supp. 649 (E.D. Wis. 1989), the decision was cited as one reason, in an analysis relegated to a

## B. Effect on Operation of Rule

The second factor under the *Chevron* analysis is whether retrospective application of the decision will " 'further or retard its operation.' " *Id.,* 404 U.S. at 107 (quoting *Linkletter v. Walker,* 381 U.S. 618, 629 (1965)). We believe that retrospective application would advance, rather than retard, the rule announced by *Patterson.*

First, providing a remedy under 42 U.S.C. sec. 1981 for those plaintiffs whose lawsuits either were commenced prior to *Patterson* or are based on events that predated the decision, even though the statute does not permit that remedy, partially vitiates *Patterson*'s recognition that sec. 1981 only prohibits discrimination in the making and enforcement of contracts. *See Lavender,* 897 F.2d at 806–807. Second, employment-related racial harassment of the type McKnight alleges he suffered is actionable under Title VII of the Civil Rights Act of 1964, which makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. sec. 2000e–2(a)(1). *Patterson,* 109 S. Ct. at 2374–2375, 105 L. Ed. 2d at 152–154. We agree with the United States Court of Appeals for the Fifth Circuit that not applying *Patterson* to pending cases would undercut Title VII's "detailed and well-crafted procedures for conciliation and resolution" of racial discrimination claims short of litigation, if possible, *see Patterson,* 109 S. Ct. at 2374–2375, 105 L. Ed. 2d at 153. *See Lavender,* 897 F.2d at 807; *Carroll,* 891 F.2d at 1176.[4]

footnote, not to apply *Patterson* retrospectively. *Gillespie,* 717 F. Supp. at 651 n.2. We decline to follow *Gillespie.*

[4]Although it is not clear from the appellate record whether McKnight pursued his Title VII remedies, that issue is as

258

## C. Equity

The third factor to be considered under the *Chevron* analysis is whether retrospective application of *Patterson* would " 'produce substantial inequitable results.' " *Chevron*, 404 U.S. at 107 (quoting *Cipriano v. City of Houma*, 395 U.S. 701, 706 (1969)). The essence of McKnight's argument is that his lawsuit should have reached final judgment well before *Patterson* was announced, and that he should not be penalized by the various delays, for which he blames the defendants. Both parties to litigation, however, have the right to a fair resolution of their dispute under an accurate assessment of the law. As *Lavender* expressed it in connection with an argument similar to McKnight's:

> We recognize that the plaintiffs have incurred the expenses of both trial and this appeal. Although it appears unjust to limit the reach of section 1981 given its prior interpretation [in the Fifth Circuit], it would also be unjust to subject [the defendant] to a cause of action which, as the Supreme Court has now held, is not permitted under section 1981.

897 F.2d at 807. Significantly, as we have already noted, unlike the situation in the Fifth Circuit, there were no Wisconsin appellate decisions construing 42 U.S.C. sec. 1981 to encompass post contract-formation employment-related claims of racial harassment at the time McKnight commenced this action; McKnight was not lulled into a false sense of security by Wisconsin precedent. *Compare Chevron*, 404 U.S. at 107–108 (inequitable to hold that lawsuit timely filed when commenced under then-existing and binding precedent

immaterial here as it was in *Patterson,* 109 S. Ct. at 2375, 105 L. Ed. 2d at 153–154, and *Lavender,* 891 F.2d at 807.

is "retroactively time barred"). In sum, it is fair to both parties that this action be governed by 42 U.S.C. sec. 1981 as interpreted by *Patterson*.

## III.

We conclude that there are no "compelling judicial reasons," *Bell*, 134 Wis. 2d at 31, 396 N.W.2d at 331, to limit *Patterson*'s interpretation of 42 U.S.C. sec. 1981 to prospective application. Accordingly, the trial court's dismissal of McKnight's action under sec. 1981 must be affirmed.

*By the Court.*—Judgment affirmed.