James R. PARADINOVICH and Stephen A. Parks, Plaintiffs-Respondents,

v.

MILWAUKEE COUNTY, Richard E. Artison, Bernard Tesmer, Gary Kasza, Mark Warichak, Dale Paetow and Carol Haeflinger, Defendants-Appellants,†

Gale V. COLEMAN, Defendant-Respondent.

Court of Appeals

*No. 93–0762. Submitted on briefs April 13, 1994.—Decided November 8, 1994.*

(Also reported in 525 N.W.2d 325.)

†Petition to review denied.

For the defendants-appellants the cause was submitted on the briefs of *Reinhart, Boerner, Van Deuren Norris & Rieselbach, S.C.*, with *Scott W. Hansen, Anne Willis Reed*, and *Kathleen S. Donius*, of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the briefs of *Walter F. Kelly*, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Legal Aid Society of Milwaukee, Inc.*, with *James M. Brennan*, and *James A. Walrath*, of Milwaukee.

Amicus Curiae brief was filed by *Whyte, Hirschboeck Dudek, S.C.*, with *Charles H. Bohl*, and *Kathryn M. West*, of Milwaukee, for Wisconsin Counties Association.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J. Milwaukee County appeals from the final judgment of the trial court, following a jury verdict, awarding compensatory damages, puni-

tive damages, costs and attorney fees to James R. Paradinovich and Stephen A. Parks, and further ordering that Milwaukee County indemnify Gale V. Coleman as to all recoveries against her for damages, costs, and attorney fees. The County also appeals from the trial court's award of enhanced attorney fees to counsel for Paradinovich and Parks. We conclude that, except for the attorney fee issue, Milwaukee County waived all issues on appeal as a matter of right because it failed to comply with § 805.16(1), STATS. In the interest of justice, we also decline to exercise discretionary review. We also conclude, however, that the trial court incorrectly determined the issue of enhanced attorney fees.

This case comes from the tragic incident of October 2, 1987, when inmate LaRon McKinley shot Milwaukee County Deputy Sheriff Paradinovich as he and Deputy Parks were transporting McKinley from the Milwaukee County jail to the Dane County jail. Before leaving Milwaukee, McKinley had concealed a gun he had obtained from Deputy Sheriff Coleman who apparently had fallen in love with McKinley and had agreed to help him escape. Paradinovich and Parks brought numerous claims against Milwaukee County, its sheriff, a number of the sheriff's department employees, and Coleman. The jury returned a verdict in favor of Paradinovich and Parks, awarding them approximately $5.3 million in compensatory and punitive damages. The County brought numerous post-verdict motions. The County failed, however, to accomplish service on the plaintiffs within twenty days after the verdict, as required by § 805.16(1), STATS., which provides, in part: "Motions after verdict shall be filed and served within twenty days after the verdict is rendered . . .."

The trial court reviewed affidavits, depositions, and briefs, and heard extensive oral argument regarding whether the County had complied with the statute. The trial court provided an oral decision that presents a fully substantiated set of factual findings, an accurate analysis of the legal issue, and a correct conclusion that the County's non-compliance with § 805.16(1), STATS., deprived the trial court of competency to consider the County's post-verdict motions. *See Brookhouse v. State Farm Mut. Auto. Ins. Co.*, 130 Wis. 2d 166, 167-171, 387 N.W.2d 82, 83-84 (Ct. App. 1986) (trial court correctly ruled that it lost competency to exercise jurisdiction because party failed to comply with § 805.16, STATS.); *see also Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 420, 405 N.W.2d 354, 363 (Ct. App. 1987); *Ahrens-Cadillac Oldsmobile v. Belongia*, 151 Wis. 2d 763, 765-767, 445 N.W.2d 744, 745 (Ct. App. 1989). Accordingly, we include and incorporate the relevant portions of the trial court's decision as the appendix to this decision. Additionally, we note several points in light of the County's arguments on appeal.

The County's appellate brief challenging this aspect of the trial court's decision consists of a single paragraph and two footnotes. Conspicuous by its absence is any argument countering the trial court's findings regarding the County's unconscionable conduct that included (1) the knowing submission of false affidavits in an effort to deceive the trial court, and (2) the reprehensible effort to impugn the integrity of two truthful attorneys. Instead, the County argues that this court "should not reject this appeal because of a mailing snafu."

To suggest that the trial court reached its conclusion because of a "mailing snafu" misrepresents the

trial court decision.[1] A careful review of the record establishes that the trial court based its factual findings on substantial and credible evidence. Those findings are a tremendous embarrassment to the County. We appreciate the trial court's statement: "The County should be ashamed."

In this case, however, the County seems to know no shame. On appeal, the County argues that the trial court's conclusion regarding the County's noncompliance with § 805.16(1), STATS., was improper because "the Court did not conduct an evidentiary hearing contrary to settled practice of doing so when material issues are in dispute, the resolution of which depends on the credibility of witnesses." The County, apparently, has chosen to ignore the record. Before deciding this issue, the trial court asked counsel for the County, "And so it's your position that no additional evidence on your side either would be necessary for the court to resolve this?" He answered, "[Y]es, I would agree with that." The court continued:

> And I just want to clarify what the position of the parties is: that neither party is saying that this court needs to conduct any further evidentiary hearings, that the decision can be made based on the depositions and the affidavits that have been filed. And that's your position, as I understand it, with the exception of this additional information.

---

[1] The trial court decision provides important background essential to an understanding of this case. Thus, in addition to incorporating the trial court decision as we already noted, we take the somewhat unusual step of including the text of the trial court's oral decision as an appendix because the County does not challenge the trial court findings, and because the County misrepresents the trial court decision.

[COUNSEL FOR PARADINOVICH AND PARKS]: That's correct, Your Honor.

THE COURT: Okay. And [COUNSEL FOR THE COUNTY]?

[COUNSEL FOR THE COUNTY]: That's correct, Your Honor.

THE COURT: Then why don't we proceed to argue that issue with the state of the record as it is.

The parties then thoroughly argued the issue. The trial court took the matter under advisement and, in doing so, reiterated, without objection from the County, "that the parties concede there's no need to take additional evidence." Thus, the County's argument is baseless.

■

Our analysis, however, is not complete. Although a party who fails to comply with § 805.16, STATS., has lost the opportunity to assert appellate issues as a matter of right, this court retains discretion to address issues in the interest of justice. As the supreme court explained:

> [T]he failure to present timely postverdict motions does not deprive the court of appeals of jurisdiction to review the judgment that followed. Such failure does, however, limit the issues that may be asserted as a matter of right on the appeal. Although the issues intended to have been raised on motions after verdict may not be asserted as of right in support of the appeal, the appeals court has jurisdiction over a timely appeal and may in its discretion conclude that, in the interest of justice, the issues not assertable as a matter of right may nevertheless be reviewed.

*Hartford Ins. Co. v. Wales*, 138 Wis. 2d 508, 510-511, 406 N.W.2d 426, 427 (1987). Section 752.35, STATS., provides:

**Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

We have examined the record and considered the arguments in this case. Frankly, we are perplexed by those rulings regarding whether Coleman, in providing the gun to McKinley, was acting within the scope of her employment. *See Olson v. Connerly,* 156 Wis. 2d 488, 499-500, 457 N.W.2d 479, 483 (1990) ("an employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes"). Thus, had the County's post-verdict process fallen victim to nothing more than "a mailing snafu," and had the County candidly acknowledged that to the trial court, the County would have been in a very strong position from which to seek our discretionary review. Instead, as the trial court decision carefully describes, the County attempted to mislead with "a cavalier attitude to the truth." The County then compounded its ethical problems by claiming, on appeal, that the trial court should be faulted for failing to hold the very evidentiary hearing that the County repeatedly agreed was unnecessary. Thus, the County's

191

argument in the "interest of justice" is ironic, to say the least.

Section 752.35, STATS., specifies that this court "may" reach substantive appellate issues in the interest of justice. The County's own unconscionable conduct compels this court to decline to do so in this case. Thus, we do not decide several significant issues. That is unfortunate. It would be more unfortunate, however, if the trial court and this court lacked the fortitude to require the County to obey the law. The County eventually must recognize not only that competent litigation is important, but also, that in Wisconsin's trial courts and appellate courts, ethics do matter.

The County also appeals the trial court's award of enhanced attorney fees to Walter F. Kelly, the attorney for Paradinovich and Parks. The County does not challenge the trial court's determination of the reasonable hours/reasonable rate "lodestar" fee but argues that fee enhancement above the "lodestar" amount is foreclosed by the United States Supreme Court's decision in *City of Burlington v. Dague*, 505 U.S. —, 112 S. Ct. 2638, 120 L.Ed.2d 449 (1992).

Among the plaintiffs' claims in this case were allegations under 42 U.S.C. § 1983. Because the plaintiffs prevailed, their attorney was entitled to reasonable fees under 42 U.S.C. § 1988. The determination of reasonable attorney fees under § 1988 is left to the discretion of the trial court. *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 305, 340 N.W.2d 704, 712 (1983). A trial court's award of attorney fees under § 1988 will only be reversed if the trial court erroneously exercised discretion. *Id.* If the trial court

committed an error of law in determining the fee, however, we may reverse what ordinarily would be a discretionary ruling. *Id.*

In *Dague*, the Supreme Court considered attorney fee enhancement above the "lodestar" amount under the Federal Water Pollution Control Act and the Solid Waste Disposal Act. *Id.*, 112 S. Ct. at 2639-2640, 120 L.Ed.2d at 454. The Court explained, however, that the "fee-shifting statutes" being considered were similar to other federal fee-shifting statutes, including the one applicable to 42 U.S.C. § 1988, and "our case law construing what is a 'reasonable' fee applies uniformly to all of them." *Id.*, 112 S. Ct. at 2641, 120 L.Ed.2d at 456. The Court held "that enhancement for contingency is not permitted under the fee-shifting statutes at issue." *Id.*, 112 S. Ct. at 2643-2644, 120 L.Ed.2d at 459.

Although, on appeal, Kelly characterizes the Supreme Court's reference to § 1988 enhancements as "implied dicta," before the trial court, he essentially conceded the apparent applicability of *Dague* to § 1988 fee enhancement issues. On appeal, however, as he did before the trial court, Kelly argues that *Dague* should not be applied retroactively to this case. The trial court agreed, stating:

> To apply *Dague* retroactively, this court would have to ignore well-established, controlling precedent in this jurisdiction, specifically the Wisconsin Supreme Court decision in *Thompson* [*v. Village of Hales Corners*, 115 Wis. 2d 289, 340 N.W.2d 704 (1983)], as well as numerous federal decisions which have recognized and affirmed the application of a contingency enhancement.
>
> To apply *Dague* retroactively this court would have to ignore the undisputed fact that at the time plaintiffs' counsel undertook to represent plaintiffs

in this action, given that well-established authority, it was reasonable for counsel to expect the opportunity for a contingency enhancement if plaintiffs prevailed.

Given our Supreme Court's specific approval of the contingency enhancement in *Thompson*, and given our Court of Appeals decision in *McKnight v. General Motors Corp.*, 157 Wis. 2d 250, 458 N.W.2d 841 (Ct. App. 1990), applying the *Chevron [Oil Co. v. Huson*, 404 U.S. 97 (1971)] principles in determining retroactivity, this court declines to give the *Dague* decision retroactive effect.

Although we respect the trial court's analysis,[2] the trial court conclusion is at odds with recent, substan-

---

[2] As we stated in *McKnight v. General Motors Corp.*, 157 Wis. 2d 250, 458 N.W.2d 841 (Ct. App. 1990), "[t]here are circumstances . . . when a judicial decision should not govern claims that are based on transactions that predate the ruling." *Id.* at 254, 458 N.W.2d at 843. We explained:

Among the factors to be considered is whether:

—the decision "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed."

*Id.* (quoting *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-107 (1971)).

*Dague* established a new principle of law and resolved an issue in a way that was not *clearly* foreshadowed. Indeed, on this point there seems to be little if any dispute. As Justice Blackman, joined by Justice Stevens, asserted in dissent, "The Court's decision . . . violates the principles we have applied consistently in prior cases . . .." *Dague*, 112 S. Ct. at 2644, 120 L.Ed.2d at 460 (Blackman, J., dissenting). Justice Scalia, writing for the majority, acknowledged the unsettled issue and the fact that, in its earlier attempt to resolve the issue, the Court

tial authorities. In *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991), the United States Supreme Court held that it is "error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." *Id.* at 540. In *Dague*, the Supreme Court applied its ruling retroactively and, therefore, under *Beam*, we must give it similar effect in this case. This has been the consistent conclusion of numerous courts considering the retroactive application of *Dague. See Cann v. Carpenters' Pension Trust Fund*, 989 F.2d 313, 318 (9th Cir. 1993); *Price v. Marshall Erdman & Assocs., Inc.*, 966 F.2d 320, 327-328 (7th Cir. 1992); *Knight v. Alabama*, 824 F. Supp. 1022, 1038 (N.D. Ala. 1993); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1402-1403 (9th Cir. 1993) (*Dague* applies even though *Dague* released after appellate briefing); *Jordan v. Gardner*, 986 F.2d 1521, 1531 n.10 (9th Cir. 1993); *Lipsett v. Blanco*, 975 F.2d 934, 943 (1st Cir. 1992) (*Dague* precludes contingency fee enhancement in civil rights casé even though *Dague* released after decision below); *Wolfel v. Morris*, 972 F.2d 712, 720 (6th Cir. 1992) (*Dague* applies even though *Dague*

had divided with four justices concluding that enhancement was not permitted, four others concluding that it was, and one justice taking a separate position between the two extremes. *Id.*, 112 S. Ct. at 2640-2641, 120 L.Ed.2d at 455-456.

Further, in this case, Kelly relied on authorities predating *Dague*. In his uncontroverted affidavit submitted to the trial court for the determination of attorney fees, Kelly stated that he applied the "lodestar" fee analysis and "a multi-variable standard" for enhancement based on the Wisconsin Supreme Court's decision in *Thompson. Thompson*, predating *Dague*, incorporated numerous criteria that could form the basis for trial courts to order enhanced attorney fees above the lodestar amount. *See Thompson*, 115 Wis. 2d at 307-308, 340 N.W.2d at 713.

released after trial court decision); *Loper v. New York City Police Dep't*, 853 F. Supp. 716 (S.D.N.Y. 1994); *Earth Island Inst., Inc. v. Southern Cal. Edison Co.*, 838 F. Supp. 458 (S.D. Cal. 1993); *Griffin v. Strong*, 827 F. Supp. 683 (D. Utah 1993); *Ermler v. Town of Brookhaven*, 795 F. Supp. 85 (E.D.N.Y. 1992). Accordingly, we conclude that *Dague* must be applied retroactively to this case and, therefore, Kelly's contingency fee enhancement is not permitted. We remand for the recalculation of attorney fees without contingency fee enhancement.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

## APPENDIX

Good morning. This is a continuation of the proceeding with respect to the motions after verdict in this matter. The first issue is whether the County defendants served their motions after verdict within the time limits established under Section 805.16(1), Wis. Stats.

This case was tried to a jury and a verdict was rendered on April 16, 1992. Section 805.16(1) requires that motions after verdict shall be filed and served within 20 days after the verdict is rendered. It is undisputed that May 6th, 1992, is the 20th day. It is also undisputed that County defendants filed their motions after verdict with this court on May 4th, 1992. The court file contains the motion file-stamped as received on that date.

The undisputed issue is whether the County defendants served the motions on plaintiff and Defendant Coleman within the 20-day period. This issue was submitted to this court solely on affidavits and depositions. At the hearing yesterday, the parties conceded there was no need to take additional evidence; thus,

any opportunities to submit additional evidence has been waived. The court has had an opportunity to review the factual submissions and consider the arguments of counsel, and the case is set for decision.

Based on the submissions, the court makes the following findings of fact: Ms. Pesek, secretary to [Milwaukee County Assistant Corporation Counsel Gerald D.] Pagel, hand-delivered the motions after verdict to this court on May 4th, 1992. Upon return to the office, she asked Attorney Pagel whether she should send the copies to counsel by certified mail. He said that would not be necessary. He directed that the copies be sent by regular in-house county mail. There's no dispute that service was not done by certified mail; it was not done by personal service on the attorneys; it was not done by depositing the copies in the . . . United States Post Office boxes located within the courthouse.

Pesek testified that she prepared the envelopes and copies and placed them in a box to be processed in the county's in-house mailing system. At some point in time, Attorneys [Walter F.] Kelly [counsel for Paradinovich and Parks] and [James M.] Brennan [counsel for Coleman] became aware that the motions had been filed but they had not received copies as of May 14th, 1992. The facts surrounding those events are not in dispute and are set forth in the record.

On May 14th, 1992, Pesek was informed by the deputy clerk in this court that neither Attorney Kelly nor Attorney Brennan had received copies of the County's motions. Pesek told this to Attorney Pagel. Pagel directed Pesek to file an affidavit of mailing with the court and fax copies to Attorneys Kelly and Brennan. Copies of motions, correspondence and motion slips were also sent certified mail on that date, May 14th, 1992. The affidavit filed by Ms. Pesek on May

14th, 1992, is in the record as Exhibit 7A. A second affidavit was submitted by Pesek on May 21st in response to plaintiffs' motion for discovery on the issue of service. That affidavit describes Pesek's preparing the envelopes and placing them in the county in-house mail.

Evidence was presented concerning the county in-house mailing system, which contracts out with Federal Mailing Systems, Inc. It is not disputed that Federal Mailing Systems is not the United States mail. Both Attorney Pagel and Ms. Pesek knew this at all times relevant to these proceedings.

The procedures for county in-house mail used are set forth in the submissions of the parties and, for the most part, those procedures are not disputed. The general procedures for pick-up of unmetered mail, the metering and the pick-up by FMS for delivery to the post office are described by Ms. Kosso, [Coordinator of the Mail Room for the Milwaukee County Courthouse Complex] and Ms. Alexander [Account Executive for Federal Mailing Systems, Inc.].

On or about May 14th, Pesek contacted various persons in an effort to find out what happened to the envelopes. Eventually, she spoke with Ms. Hrubesch, [an employee] of the United States Post Office [working in the Milwaukee office in Consumer Affairs] concerning tracing these envelopes. Pesek was told that the sender would be the one to pursue a trace on the envelopes. Credible evidence on this record is that Attorney Pagel told Pesek not to pursue the trace, and Pesek told Ms. Hrubesch not to proceed.

Pesek's statements that she believed the addressee had to initiate a trace is not consistent with the testimony of Ms. Hrubesch and her supporting documents. Hrubesch is a disinterested party and is the

more credible witness on this issue. To this date, no explanation has been provided why the County did not proceed to trace this information once informed by the submissions herein that it was within their power to do so.

On May 16, 1992, Attorney Kelly received an envelope, Exhibit A to his affidavit, containing an original letter, motion slip and motions. The envelope is unmarked and untorn. Postage meter date is May 4, 1992. There's no other date other than a notation of "received, 5-16-92, WLK."

On May 18th, 1992, Attorney Brennan received an envelope containing a Xerox copy of the letter, motion slip and motions. The envelope is similarly unmarked and untorn. The postage meter date is May 4, 1992. The only other date is a received stamp of 5-18-92.

The postage meter used by the county, it is undisputed, can be back-dated without detection. Other findings of fact will be made in the balance of this decision.

Section 805.16 requires that motions after verdict shall be filed and served within 20 days. Although there is no appellate decision precisely on point, the cases that have considered this statute, such as Ahrens[-Cadillac Oldsmobile, Inc.] v. Belongia, [151 Wis. 2d 763, 445 N.W.2d 744 (Ct. App. 1989)] have held the provisions of this statute to be mandatory. Certainly, such a conclusion is consistent with the plain language of the statute. If motions are not filed in strict compliance with this statute, the trial court has lost competency to consider the motions.

State v. Rhone, [94 Wis. 2d 682, 288 N.W.2d 862 (1980)] cited by defendants, actually supports this strict interpretation. In that case, the Supreme Court found that no statute required that service be made on

the opposing party in that proceeding. In its discussion, the court recognized a different result would be required in that case if the statute had required service. Here, the statute does just that.

In accordance with the <u>Schroedel [Corp. v. State Highway Comm'n</u>, 38 Wis. 2d 424, 157 N.W.2d 562 (1968)] decision, the burden of establishing timely service is on the County defendants. Since County defendants elected to use regular mail, they have the burden to show that such mailing was timely accomplished. To constitute mailing, the County defendants must establish placement in the U.S. mails.

To meet its burden, the County offers the following: First, the testimony of Ms. Pesek. The affidavit of Pesek, which was notarized and filed on May 14th, 1992, would generally be sufficient to meet this burden, but the problem is it was not true. The envelopes were not placed by her in the United States mail. The envelopes did not contain sufficient postage affixed. Indeed, no postage was affixed. The affidavit was not prepared by her consistent with her regular procedures with respect to mailing. In other words, the facts alleged in the affidavit were not true and Pesek knew it. Indeed, from this record, the conclusion is inescapable that Attorney Pagel also knew the facts were not true.

The affidavit, in and of itself, is significant, certainly, but it is also significant — and this court cannot ignore this fact — that the County's first response, when it learned that Attorneys Kelly and Brennan had not received the motions they now strenuously argue to this court they had already served, was to file a false affidavit.

Aside from the serious ethical concerns with this conduct, such action seriously undermines the County's arguments. If indeed they are correct that

service using the regular county in-house mailing procedures was accomplished, why didn't they say so? Why didn't they file an affidavit to that effect at that time, particularly on these facts where Pagel chose the affidavit to complete and didn't just have Pesek complete whatever affidavits she normally completed as a regular practice?

In arguing that the affidavit was "typical form", "routinely completed", the County ignores the fact that it was materially untrue and misleading to this court. It ignores the fact that both the persons signing and the person directing it to be signed knew it was not true.

Given Pesek's filing of an admittedly false affidavit, certainly her testimony is insufficient to meet the County's burden. Even if you believe her, she now acknowledges that she did not put the motions in the United States mail and she has no personal knowledge that they were so mailed.

The testimony of Ms. Pesek was offered, also, to establish the general mailing procedures for county mail, and, as indicated, these general procedures are not disputed. But evidence of these procedures alone is not sufficient to meet the burden imposed. There must be some corroborative evidence that these procedures were followed in the instant case with respect to these motions.

The County relies on Christnacht [v. DILHR, 68 Wis. 2d 445, 228 N.W.2d 690 (1975)] but in that case, there was evidence of a routine practice and evidence of substantial compliance with that procedure — significantly, in that case, there was some evidence that was prepared contemporaneously with the mailing — as well as evidence that the post office had received the questioned piece of mail. No such corroborating evidence exists in this case. There's no contemporaneous

affidavit of mailing. There's no evidence the post office received the questioned piece of mail in a timely manner. And, indeed, there is strong evidence to the contrary.

Finally, the County argues that the fact that both Attorneys Kelly and Brennan received the motion provides sufficient corroboration that the regular mailing procedures were followed, but this is true only if there is evidence the items received by Attorneys Kelly and Brennan were items actually mailed by the County on May 4th.

The County complains that Attorneys Kelly and Brennan misled the court by their silence at the hearing on plaintiff's [sic] motion for discovery, but at that hearing, this court had before it the May 14th Pesek affidavit and her May 21st affidavit. The conflict in those affidavits was sufficient to warrant the granting of the motion, regardless of receipt of any documents.

Attorney Brennan received the mailing on May 18th, 1992. No evidence was offered to dispute this fact. The County attempted unconvincingly to attack Attorney Brennan's credibility, but such attack finds no support in this record. The envelope has a received stamp on it, applied in the regular practice of his office, and the date is May 18th. It is what it is. No evidence disputes this.

Attorney Kelly received the mailing on May 16th, 1992. No evidence is offered to dispute this fact. The County attempts to attack Attorney Kelly's credibility, and those arguments are equally unconvincing.

The envelopes do contain the date of May 4, 1992, applied by the county postage meter. There is undisputed evidence, however, that the county's postage meter may be altered. Plaintiffs do not have to establish the date was placed fraudulently. The issue is

202

whether such a date meets the County's burden, given the fact that the date can be altered.

The most persuasive evidence on this issue is from the United States Post Office, a disinterested party. The offices of Kelly and Brennan are in two different zip codes. They involve, with respect to mailing, two different substations. The envelopes are two envelopes from one center to two different addresses, and both were lost for a period, allegedly, of over ten days. Yet, they arrived in pristine condition. There are no rips, tears, smudges or other indications of being mishandled or misplaced. There are no postage markings which are normally placed on lost mail.

According to Mr. Lerback, [Manager of Consumer Affairs, Milwaukee Division] [109/1] of the United States Postal Service, it is highly improbable that both could be lost in this manner. It is highly improbable, according to him, that they were placed in the United States mail on May 4th, 1992. Moreover, it is probable that they were placed in the mail at or near May 15th, 1992. Lerback's testimony was unrefuted. Lerback's testimony was strong, clear and convincing.

Then when the envelope addressed to Mr. Kelly is opened, its contents are not consistent with Pesek's specific description of what she placed in the envelope on May 4, 1992. According to her deposition testimony, she was specific in recalling that she checked the envelopes and that the copies had yellow markings and were copies. Yet, the materials in the envelopes are originals with no such markings.

The County's final argument is that even if the motion was not served within the time limits mandated by statute, plaintiffs had notice because of an article in the newspaper. No authority is cited for such an extraordinary position, and that argument is frivolous.

203

The court recognizes the harsh result, but the statute is clear. The size of the verdict is not a relevant factor in determining whether or not the statute-ordered mandates have been complied with. The time limits are specific. The failure to comply has a specific result mandated by the statute and appellate case decisions. The court cannot ignore such relevant and controlling precedent.

Before concluding, the County argues that this result is inconsistent with the interest of justice. I find it ironic for the County to raise that particular argument. As indicated, the May 14th Pesek affidavit was a significant factor in the conclusions reached by this court. First, it was an admittedly untrue affidavit which was submitted immediately when a question was raised concerning timely service. There is no evidence that any investigation into the facts was conducted before filing this affidavit. Then when it was clear that the affidavit was not sufficient to avert further investigation by others, another affidavit was prepared and signed directly contradicting that affidavit. And what is the County's position now with respect to the May 14th affidavit? It's just a form; it's done all the time. Not in this court. No court should tolerate such a cavalier attitude to the truth.

This affidavit was specifically selected to be prepared in this case. It was not an innocent act of inadvertently reaching for the inappropriate form. This affidavit was directed to be signed by Attorney Pagel. The form and content of the affidavit was selected for use in this case. The affidavit was knowingly offered in the legal proceeding. The affidavit was offered for the purpose of having an effect on these proceedings. The affidavit was offered knowing it was materially untrue. Yet, the County continues to argue

204

it's just a form; it's not significant; it happens all the time. The County should be ashamed. Such an argument is inconsistent with the standards of the legal profession and the requirements that attorneys are officers of the court, and such an argument and such conduct is inconsistent with the interest of justice.

For the reasons set forth herein, the court finds that the motions of the County defendants in this case were not served as required by Section 805.16(1) of the statutes and, thus, is not timely. The court has no competence to hear these motions.